## STATE OF CONNECTICUT *v.* PAUL CAMPBELL
### (AC 26028)

Schaller, Gruendel and Peters, Js.

Argued November 13, 2006—officially released January 2, 2007

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Kelley P. Swift*, former assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Paul Campbell, appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.

On appeal, the defendant claims that the trial court improperly instructed the jury with respect to the charge of possession of a weapon in a motor vehicle. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 12, 2003, Lou DeRubeis, a Stamford police officer, was assigned to conduct a seat belt enforcement checkpoint. He observed the defendant operating a gray motor vehicle without wearing his seat belt. Earlier that day, DeRubeis had learned that there was a possible active arrest warrant for an individual named Paul Campbell. DeRubeis followed the defendant, whom he had recognized from prior police encounters as Paul Campbell. After learning that a warrant in fact existed for Paul Campbell with a date of birth of 1966, DeRubeis activated his vehicle's lights and sirens and stopped the defendant's vehicle.

As DeRubeis approached the vehicle, the defendant began screaming obscenities at him. The defendant's tirade prevented DeRubeis from having any meaningful conversation with him. DeRubeis eventually managed to ask the defendant for his driver's license and date of birth, but the defendant refused to cooperate. Carlos Vinhais, a state police trooper, drove by and heard the defendant yelling at DeRubeis. Vinhais turned his vehicle around in order to assist DeRubeis and to ensure his safety.

As Vinhais approached the defendant's vehicle on foot, DeRubeis observed that pedestrians had started to gather and that traffic had begun to back up. The defendant failed to comply with Vinhais' instruction to shut the engine off. Vinhais opened the passenger door, reached into the vehicle, turned off the engine and removed the keys from the ignition. The defendant began clenching his fists and rocking back and forth. At this point, DeRubeis decided to place the defendant under arrest and ordered him to step outside of the

vehicle. When the defendant refused, DeRubeis and Vinhais forcibly removed him from the vehicle.

While restraining the defendant, DeRubeis observed in plain view a knife located in an open compartment of the driver's side door. The length of the blade was 4.75 inches. The defendant was escorted to the backseat of DeRubeis' patrol vehicle. DeRubeis again asked the defendant for his date of birth. The defendant complied and, at that point, DeRubeis learned that the arrest warrant was not for the defendant but for another individual named Paul Campbell.

The defendant was charged, tried and convicted. The court sentenced him to a total effective term of five years incarceration, suspended after eighteen months, and five years probation. Additional facts will be set forth as necessary.

The defendant's sole claim on appeal is that the court improperly instructed the jury with respect to the crime of possession of a weapon in a motor vehicle. Specifically, he argues that the court failed to instruct the jury as to the element of the absence of a permit for the weapon.[1] The defendant concedes that this claim is

[1] General Statutes § 29-38 provides: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word "weapon", as used in this section, means any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument. "(b) The provisions of this section shall not apply to: (1) Any officer charged with the preservation of the public peace while engaged in the pursuit of such officer's official duties; (2) any security guard having a baton or nightstick in a vehicle while engaged in the pursuit of such guard's official

unpreserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] The state responds that the defendant induced or waived any error and therefore cannot prevail on his claim. We agree with the state's argument.

The following additional facts are necessary for our discussion. Following closing arguments, the court reviewed its proposed jury charge with the parties. With respect to the charge of possession of a weapon in a motor vehicle, the court stated: "I want to go over

duties; (3) any person enrolled in and currently attending a martial arts school, with official verification of such enrollment and attendance, or any certified martial arts instructor, having any such martial arts weapon in a vehicle while traveling to or from such school or to or from an authorized event or competition; (4) any person having a BB. gun in a vehicle provided such weapon is unloaded and stored in the trunk of such vehicle or in a locked container other than the glove compartment or console; and (5) any person having a knife, the edged portion of the blade of which is four inches or over in length, in a vehicle if such person is (A) any member of the armed forces of the United States, as defined in section 27-103, or any reserve component thereof, or of the armed forces of this state, as defined in section 27-2, when on duty or going to or from duty, (B) any member of any military organization when on parade or when going to or from any place of assembly, (C) any person while transporting such knife as merchandise or for display at an authorized gun or knife show, (D) any person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired, (F) any person holding a valid hunting, fishing or trapping license issued pursuant to chapter 490 or any salt water fisherman while having such knife in a vehicle for lawful hunting, fishing or trapping activities, or (G) any person participating in an authorized historic reenactment."

[2] "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 181 n.6, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

that with you because it seems to me there [are] four statutory elements, three of which were applicable in this particular case. The first being that the defendant owned, operated or occupied a motor vehicle. The second being that the defendant had a weapon in the vehicle. And the third being that the defendant knew the weapon was in the vehicle.

"It is interesting that the fourth element you usually give [to the jury] is [that] the defendant did not possess a permit for the weapon. Many times you are dealing with a pistol or a firearm. Sometimes you can have fishing and hunting permits. There is a whole list or plethora of statutory exceptions as to how you can carry it, none of which I thought were justified by the evidence in this case.

"Now, there are two ways of handling this. Either I can mention this, that he did not possess a permit for a weapon, such as—and give examples. Or I can go through all the statutory exceptions. I am of the opinion that that would simply confuse the jury . . . ."

Defense counsel agreed with the court and requested that this portion of the instruction not be given to the jury.[3] The prosecutor argued for the inclusion of the statutory exceptions in the charge to the jury. The prosecutor contended that this would assist the members of the jury to understand that, although some circumstances permit the carrying of weapon in a vehicle, the

---

[3] The following colloquy took place:

"The Court: So, I take it then that that being the case, that you would have no objection to the [fourth element] being omitted from the charge.

"[Defense Counsel]: I—I have no problem with that because it may just confuse—

"The Court: Do you think that is appropriate and it makes sense? Do you think it is appropriate and makes sense? You . . .

"[Defense Counsel]: Oh—

"The Court: Do you think it is appropriate and it makes sense?

"[Defense Counsel]: Yes I do, Your Honor.

"The Court: I think probably it would create a greater problem for your client if I left that line in there. Do you not agree?"

"[Defense Counsel]: *I do agree.*" (Emphasis added.)

defendant did not fall within these statutory exceptions. Defense counsel responded to the prosecutor's argument by stating: "Well, Your Honor, I thought we were going to take out the part about the permits because I thought that it made it easier for the jury to understand." After the court indicated that it would not give the charge requested by the state, defense counsel indicated that he did not "see any problem with that the way that is." Finally, after the court decided that it would not instruct the jury on the permit exception, defense counsel stated: "I am satisfied with the way it is, Your Honor."

We conclude that the defendant is precluded from claiming that the court improperly failed to instruct the jury as to the element of the absence of a permit for the weapon because he induced the court to eliminate that instruction. "The term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *DiLoreto*, 88 Conn. App. 393, 397–98, 870 A.2d 1095 (2005). Our Supreme Court has held that *Golding* review will not be afforded in cases of induced error. *State* v. *Cruz*, 269 Conn. 97, 105–107, 848 A.2d 445 (2004); see also *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005); *State* v. *Gibson*, 270 Conn. 55, 66–68, 850 A.2d 1040 (2004); *State* v. *Felder*, 95 Conn. App. 248, 255–56, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006); *State* v. *Caracoglia*, 95 Conn. App. 95, 121, 895 A.2d 810, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006); *State* v. *Schiavo*, 93 Conn. App.

290, 299–300, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006). Accordingly, we will not review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.