STATE OF CONNECTICUT *v.* ANGEL T.[1]
(AC 27168)

DiPentima, McLachlan, and McDonald, Js.

Argued March 13, 2007—officially released February 5, 2008

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

*Gary A. Mastronardi*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Angel T., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1) and (2). The defendant claims that the prosecutor violated his constitutional rights against self-incrimination and to counsel and, therefore, deprived him of his right to a fair trial. He argues that the prosecutor improperly asked the jury to infer guilt by introducing and commenting on evidence that the defendant had obtained a lawyer and refused to be interviewed by the police. We agree with the defendant and find prejudice calling for a new trial. The judgment is therefore reversed.

The following evidence was introduced at the defendant's trial. The victim, then age ten, was the defendant's niece, and the defendant lived at the victim's family residence. In July or August, 1999, the defendant, on three occasions, entered the victim's bedroom while

she was asleep. During the first two occasions, the defendant touched the victim's legs and tried to pull down her pajama pants. Each time the victim kicked the defendant, and he left the room before he succeeded in removing her pants. On the third occasion, the defendant entered the victim's bedroom while she was asleep, pulled down her pajama pants, held her legs tightly and licked and bit her in the vaginal area. After the victim hit and kicked the defendant and called out for her father, the defendant left the room.

Two days after the third incident, the victim told her parents about the defendant's actions. Her parents confronted the defendant, and, shortly thereafter, he moved out of the residence to New Jersey. No report was made to police at that time. In May, 2004, the victim's mother told a family counselor about the defendant's conduct, and the counselor reported those allegations to the police, who initiated a criminal investigation.

During the investigation, Bryan Bishop, a police detective, attempted to interview the defendant. Bishop left a telephone message to that effect for the defendant in New Jersey. The following day, Bishop received a telephone call from Ron Sanchez, who identified himself as the defendant's attorney. Sanchez and Bishop scheduled an interview of the defendant by the police, which was to take place at Sanchez' office in New Jersey on July 7, 2004. When Bishop contacted Sanchez on July 6, 2004, to confirm the interview, Sanchez told Bishop that he could no longer make contact with the defendant. As a result of that conversation, Bishop did not travel to New Jersey to interview the defendant but later repeatedly called the defendant's telephone number in New Jersey without successfully contacting him.

At trial, in the state's case, the prosecutor solicited testimony on direct examination from the victim, the

victim's mother and the counselor indicating that each individual had given written statements to the police. The prosecutor solicited testimony from Bishop in the state's case that Bishop had taken written statements from the victim, the victim's mother and others. The prosecutor also presented testimony that Bishop had sought a statement from the defendant, whom he had located in New Jersey, but that when Bishop later spoke with Sanchez, Sanchez claimed that he could not contact the defendant.

When the defendant testified in his case on direct examination, he denied sexually assaulting the victim. During his direct examination, the defendant did not testify about giving the police a statement. The prosecutor, however, on cross-examination, asked the defendant about his failure to submit to the police interview in July, 2004. In so doing, the prosecutor asked the defendant why he did not speak with the police. In response, the defendant testified that his attorney's advice was not to speak to anyone about the matter. The defendant testified that his attorney instructed him that he could not talk to anybody and that his attorney would represent him in all matters. In response to the prosecutor's question about whether the lawyer would not let him talk to the police even with the lawyer present, the defendant replied in the affirmative but added that he never talked to the police.

During opening summation, the prosecutor argued that Bishop's failure to meet with the defendant was through no fault of the detective himself. The prosecutor commented that the detective had gathered information from the victim and her family and also had attempted without success to get information from the defendant.[2] Defense counsel, during summation, did not touch on the police attempts to interview the defendant.

[2] In closing argument, the prosecutor stated: "You have [the victim's] mom, people that you would normally expect her to deal with; her mother, her father, the investigating detective, Bryan Bishop, who sought to get

The prosecutor then argued in closing summation that Bishop had wanted to interview the defendant and that there were three versions as to why the interview had not taken place, the defendant's, Sanchez' and Bishop's. The prosecutor argued that Bishop was an impartial investigator reaching out to see what everybody had to say and that Bishop would have benefited from the defendant's interview in evaluating the case. Once contacted by the defendant's attorney, the prosecutor stated that Bishop "play[ed] it straight up" and tried "to go through that attorney" but was told that the attorney could not contact the defendant. The prosecutor also stated that Bishop testified that he had received no response when he attempted later to contact the defendant directly.

Later in closing summation, in discussing the defendant's credibility, the prosecutor pointed out that the defendant was provided with an opportunity to help with the investigation and asked the jury if he elected to do so. The prosecutor remarked that on the witness

information from everyone that was involved and was only able, not through [any] fault of the detective himself, but was only able to get it from [the victim] and her family, but he made that attempt to get it from the defendant. . . .

\* \* \*

"You have Detective Bryan Bishop . . . now he's an investigator that talked to a number of witnesses in this case, sought to interview the defendant. Now, you have three versions in this area. You have what the defendant told you about when he was contacted or received knowledge of the contact by the . . . police department. You have the information that Detective Bishop provided you about what the attorney—the defendant's own attorney said. And, you have the information about what Detective Bishop did. Here, you have an impartial investigator reaching out, wants to see what everybody has to say. All right. Is the defendant mistaken? Is Detective Bishop mistaken? Is the attorney mistaken? What [does] your own common sense and everyday life experience tell you? Wouldn't it certainly be to Detective Bishop's benefit to have that interview so he can evaluate his case? He went through the attorney. Once he was contacted by the attorney. He kept trying to go through that attorney, playing it straight up. The attorney says he can't get a hold of [the defendant]. Tries to make other contact, no reply."

stand, the defendant gave the impression that it was always someone else's fault because the defendant wanted the interview but that Bishop changed the appointment.[3]

The defendant argues that the introduction of that evidence and comments on it violated his due process right to a fair trial.[4]

"A defendant has the right to the assistance of counsel for his defense; that right is secured by the sixth and fourteenth amendments to the United States constitution. Generally, while a prosecutor may invite the jury to draw reasonable inferences from the facts in evidence, he or she may not invite the jury to draw adverse inferences from the fact that a defendant, at any time, retained counsel. A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt. *Sizemore* v. *Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990); see also *United States* v. *Santiago*, 46 F.3d 885, 892 (9th Cir.) (under the Sixth Amendment right to counsel, prosecutors may not imply that the

[3] The prosecutor stated during rebuttal: "Then you had the defendant himself; listen to the court's charge about the interest in—that he has in the case. What was his demeanor in court when you saw him? He had an opportunity to help the investigation, ladies and gentlemen. Did he choose to do that? You can believe some, all and or none of any testimony that's given.

"Did you get the impression, when you saw him on the witness stand, that made it always be somebody else's fault? You know, I was there, I wanted to talk to—I would have talked to—talked to the police officer, but the appointment was changed. All right. That's putting the blame. And here's the situation that's not concerned with this case, except that he wants to be interviewed about it, but the third party that's involved is Detective Bishop, and they're putting the blame on someone else. Is that consistent with trying to shift blame in a more serious case, in a more serious example?"

[4] Although the defendant's claim of prosecutorial impropriety was not preserved at trial, it may be reviewed utilizing the two-pronged analysis that we have applied in the past. See *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004) (unpreserved claims of prosecutorial impropriety reviewable without seeking *Golding* review). Furthermore, the state does not contest the reviewability of this claim.

fact that a defendant hired a lawyer is a sign of guilt), cert. denied, 515 U.S. 1162, 115 S. Ct. 2617, 132 L. Ed. 2d 860 (1995); *United States* v. *McDonald*, 620 F.2d 559, 564 (5th Cir. 1980) ([i]t is impermissible to attempt to prove a defendant's guilt by pointing ominously to the fact that he has sought the assistance of counsel), on appeal after remand, 672 F.2d 864 (11th Cir. 1982) . . . . In *United States* v. *Liddy*, 509 F.2d 428, 444–45 (D.C. Cir. 1974), cert. denied, 420 U.S. 911, 95 S. Ct. 833, 42 L. Ed. 2d 842 (1975), the United States Court of Appeals for the District of Columbia Circuit relied on the principle that it is always improper to invite the jury to draw an inference of guilt from the fact that a defendant retained counsel." (Internal quotation marks omitted.) *State* v. *Santiago*, 100 Conn. App. 236, 244–45, 917 A.2d 1051, cert. denied, 284 Conn. 933, 935 A.2d 152, 153 (2007).

In *State* v. *Santiago*, supra, 100 Conn. App. 245, we quoted *United States ex rel. Macon* v. *Yeager*, 476 F.2d 613, 615 (3d Cir.), cert. denied, 414 U.S. 855, 94 S. Ct. 154, 38 L. Ed. 2d 104 (1973), that "a prosecutor's comment seeking to raise in the jurors' minds an inference of guilt from the defendant's constitutionally protected conduct constitutes a penalty on the free exercise of a constitutional right . . . ." (Internal quotation marks omitted.)

We recognize that references concerning defense counsel may be made by the state during trial. Such references, however, must be focused and pertinent to a proper issue rather than part of an invitation to infer guilt. See *State* v. *Santiago*, supra, 100 Conn. App. 247. In the present case, the evidence and comments exceeded a focus on any proper issues other than guilt. Before any arrest, the defendant, who was a suspect in a criminal investigation, was asked by the police to submit to a police interview. We believe that the defendant, facing such a request, has the right, without

penalty, to seek and to have the assistance of counsel when interacting with police officers who are seeking an interview. See *Coppola* v. *Powell*, 878 F.2d 1562, 1567–68 (1st Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 418, 107 L. Ed. 2d 383 (1989); *United States* v. *Caro*, 637 F.2d 869, 876 (2d Cir. 1981); *United States ex rel. Macon* v. *Yeager*, supra, 476 F.2d 615.

To determine whether the prosecutor's questions and comments were improper, we must examine their purpose and what inferences were likely to be drawn by the average juror. See *State* v. *Santiago*, supra, 100 Conn. App. 246; see also *United States* v. *McDonald*, supra, 620 F.2d 564. The state solicited evidence from numerous witnesses in its case about the defendant's and his attorney's reluctance to interact with the police in contrast to the willingness of other witnesses. The prosecutor elicited testimony about the defendant's attorney and argued that a police interview with the defendant never took place through no fault of the police, who successfully had interviewed other witnesses. Thereafter, the prosecutor suggested that the fact that the defendant had hired an attorney and refused to submit to a police interview showed a lack of helpfulness with the impartial police investigation. He portrayed the defendant and the defendant's use of an attorney as unhelpful to the investigation. The prosecutor portrayed Bishop as an "impartial investigator" who simply wanted to hear all sides of the story. In this way, the prosecutor referred negatively to the defendant's decision to retain an attorney.

We find the language of the United States Court of Appeals for the District of Columbia in *United States* v. *Liddy*, supra, 509 F.2d 444, persuasive. In that case, the court noted that the right to counsel of an accused person facing police interrogation and the privilege against self-incrimination are intimately bound

together. Id. We recognize that there may be many concerns prompting an attorney to advise his client not to be interviewed by the police. Moreover, the United States Court of Appeals for the Second Circuit has remarked that it found no cases where the prearrest refusal to grant a police interview could be, as was the case here, presented in the state's case. See *United States* v. *Caro*, supra, 637 F.2d 876. The state's introduction of evidence of the defendant's silence in response to police questioning, on advice of counsel, violated his right against compulsory self-incrimination. See *Combs* v. *Coyle*, 205 F.3d 269, 280–83 (6th Cir.), cert. denied sub nom. *Bagley* v. *Combs*, 531 U.S. 1035, 121 S. Ct. 623, 148 L. Ed. 2d 533 (2000); *Coppola* v. *Powell*, supra, 878 F.2d 1567–68; *United States* v. *Caro*, supra, 876.

We conclude that the state's introduction of such evidence and the adverse comments at trial on that evidence by the prosecutor were improper. Such argument would compel agreement to undertake a police interview. This has been condemned by the United States Supreme Court in *Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). The prosecutor's suggestion that the defendant did not help the police investigation also gave rise to the inference that the defendant did so because he was guilty. By commenting on the defendant's consultation with counsel and subsequent failure to submit to a police requested and initiated interview, the prosecutor, in the words of the United States Court of Appeals for the First Circuit, improperly implied that the defendant "had something to hide." *Coppola* v. *Powell*, supra, 878 F.2d 1566.

On appeal, the state argues that the evidence was admitted to challenge the defendant's testimony that he intended to speak with the police but that they, not he, cancelled the meeting. This argument must fail

because the record reveals that all testimony concerning the defendant's attorney and the police interview was initiated by the state in its presentation of the state's case or during cross-examination of the defendant.

Accordingly, having concluded that the prosecutor's conduct was improper, we must consider if the evidence and argument deprived the defendant of a fair trial. See *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). "In determining whether prosecutorial [conduct] . . . amount[ed] to a denial of due process, [our Supreme Court], in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) Id.

As to the harmfulness of the state's introduction of the evidence and its comments in summation, we have examined the case against the defendant to determine whether it was overwhelming. Because of the five year delay in reporting the offense, the principal evidence against the defendant was the testimony of the victim. The case against the defendant was not overwhelming. See *State* v. *Ritrovato*, 280 Conn. 36, 57, 905 A.2d 1079 (2006) (noting that in sexual assault cases, evidence not strong when there is no conclusive physical evidence and victim is minor). We also note that the jury twice reported to the court that it was deadlocked.

The record also shows that the prosecution's introduction of evidence concerning the defendant's attorney was not invited by the defense either by questioning witnesses or during final argument. We note that the

prosecutor's remarks were not in response to evidence presented by the defendant and were based entirely on evidence presented as part of the state's case or raised by the prosecutor during cross-examination of the defendant and his brother. See *State* v. *Williams*, supra, 204 Conn. 540. The state's questioning, in combination with comments made during closing argument, made the defendant's refusal to be interviewed by the police a prominent part of the state's case. Because defense counsel failed to object or to seek curative measures, none were taken by the court. In applying the *Williams* factors, we have considered counsel's failure to object; however, because of the nature of the prosecutor's conduct, we conclude that the defendant was deprived of a fair trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.